MARCUS NATHAN AND ANOTHER, APPELLANTS, *v.* COLES MORRIS AND OTHERS, INDIVIDUALLY AND AS EXECUTORS OF J. JOSEPHA NEILL, RESPONDENTS.

*Specific performance — when not decreed — a restriction against building on part of a lot is a substantial incumbrance — parol evidence to vary a written instrument — no allegation of mistake or demand to reform.*

The executors of J. Josepha Neill entered into a contract, under seal, for the sale of certain premises, by which they agreed to give their vendees an executors' deed, with a covenant against their own acts, for the conveying and assuring to the vendees of the fee simple, free from all incumbrances, except leases then existing and expiring on May 1, 1891, and the taxes for 1890. The executors subsequently tendered a deed which contained no covenant relative to incumbrances, except one against their own acts. This the vendees refused to accept for the reason that there existed in an old deed of the premises a restriction against building upon ten feet of the frontage of the lot.

The vendees brought an action for specific performance, and asked as alternative relief the repayment of their expenses under the contract, and upon the trial thereof parol evidence was admitted, on behalf of the defendants, to show that the plaintiffs signed the contract with full knowledge of the restriction, and that they agreed to purchase the premises subject thereto; and such knowledge

in the plaintiffs was found as a fact by the court, which decided, as matter of law, that the existence of the restriction did not excuse performance by the plaintiffs.

*Held,* error.

That the restriction was clearly a substantial incumbrance.

That the covenant in the contract to convey free of incumbrances, except as stated therein, being express, clear and unambiguous, parol evidence could not be admitted to vary the instrument.

That as the defendants did not ask to reform the instrument, or allege mistake either of law or fact, they had no grounds for relief.

APPEAL by the plaintiffs, Marcus Nathan and Samuel Cohn, from a judgment in favor of the defendants, entered in the office of the clerk of the city and county of New York on the 22d day of June, 1891, dismissing the complaint on the merits, with costs, after a trial by the court at the New York Special Term.

*Charles Strauss* and *Arthur Hurst,* for the appellants.

*Edgar J. Nathan,* for the respondents.

BARRETT, J. :

This action was brought by the plaintiffs, as vendees of a piece of real estate in this city, known as 105 Bleecker street, against the defendants, as vendors, for the specific performance of a contract of purchase, and, in case of inability on the defendants' part to deliver a proper deed, for the return of the sum paid on account of the purchase-money, together with the expenses of examining the title. By the terms of the contract, which was under seal, the defendants agreed to give the plaintiffs " an executor's deed, with covenant against their acts, for the conveying and assuring to them (the plaintiffs) the fee simple of the said premises *free from all incumbrance, except leases now existing, which expire the 1st day of May,* 1891, *and the taxes on said premises for the year eighteen hundred and ninety.*"

Upon the day when the contract was to be performed the parties met, and the defendants tendered a deed which contained no covenant against incumbrances other than those of the grantors' creation. The plaintiffs declined to receive the deed or to pay the balance of the purchase-price upon the ground that the property was subject to an incumbrance in the nature of a restriction against building

upon ten feet of the frontage of the lot. That this restriction existed under a deed made as far back as the year 1829 is conceded; and that it amounted in law to an incumbrance is entirely well settled. (*Roberts* v. *Levy*, 3 Abb. [N. S.], 311 ; *Huyck* v. *Andrews*, 113 N. Y., bottom of page 86 ; *Anonymous*, 2 Abb. N. C., 56 ; *Wetmore* v. *Bruce*, 118 N. Y., 319 ; Same case below, 54 Superior Court, 149.) The learned judge, under objection and exception, admitted parol evidence to prove that the plaintiffs signed the contract with full knowledge of this restriction, and agreed to purchase the premises subject thereto. There was a conflict of evidence on that head, which was solved in the defendants' favor, and thereupon the learned judge made the following finding of fact :

"*Seventh.* At the time of the execution of said contract of sale, the plaintiffs had actual knowledge of the existence, extent and effect of such restriction, and agreed to purchase said premises subject thereto."

Upon this it was held, as a conclusion of law, that the existence of the restriction was no valid ground for the refusal of the plaintiffs to accept the title tendered by the defendants, and, accordingly, the complaint was dismissed.

We are of opinion, in view of the clear and unambiguous covenant embodied in the contract under consideration, that this was error. Where an obligation depends upon implication, or where the language used is of doubtful import, parol evidence of notice may be admissible. It is then permitted for the purpose of showing what was in the minds of the parties when the contract was made. It is not permitted for the purpose of varying the contract, but by reading it in the light of the surrounding circumstances to get at its true intent and meaning ; in other words, to enable the court to ascertain what the written contract really was. If, however, the written contract is precise and clear, if it leaves nothing to implication, parol evidence is unnecessary to ascertain the exact bargain ; and if admitted, it can only be to vary the contract. This, clearly, cannot be done, and however unfortunate it may be that the contract under consideration was not drawn to cover the parol understanding, the court cannot go behind the deliberate engagement which the parties chose to sign and seal. It is difficult to imagine a clearer covenant than that now before us. The fee is to be con-

veyed free from all incumbrances, except two which are distinctly specified. The defendants wish the court to except a third, which was not specified, and to do this upon evidence that the exception was verbally made. If this were admissible, why might not the contract be further varied by a fourth or a fifth exception, covering a mortgage or an easement, or both?

We are referred to certain cases which hold that trifling incumbrances upon the title, which were known to the vendee at the time he contracted to purchase, will not prevent a decree of specific performance. (*Ten Broeck* v. *Livingston*, 1 Johns. Ch., 357 ; *Winnie* v. *Reynolds*, 6 Paige, 407.)

In two respects these cases are plainly distinguishable from the present. In the first place, the incumbrances there were trifling. In *Ten Broeck* v. *Livingston* the proportion of the quit-rent which would have fallen on the plaintiff's farm, if it was then to be collected, would have been but fifty-four cents a year. It was, as Chancellor KENT said, nothing more than a recognition of manorial seigniory, which in early days was deemed a matter of some importance. There was no evidence that this rent had been demanded or paid for sixty years prior to the making of the contract. It was upon these facts that the chancellor held that the quit-rent was never within the contemplation of the parties as an obstacle to title. In *Winnie* v. *Reynolds* there was a pre-emption right of purchase which Chancellor WALWORTH treated as a partial restriction upon the power of alienation. " It is," said the chancellor, " a remnant of feudal vassalage which a freeman would not be willing to have his land subjected to, although the actual injury to the owner of the land would amount to very little in a pecuniary view." In the case at bar the restriction is by no means trifling. On the contrary, the proof was that the restriction impaired the value of the lot to the extent of some $13,000.

The second and decisive point of distinction is, that in neither of these cases was there an express covenant with regard to incumbrances. This was specially referred to by Chancellor WALWORTH in *Winnie* v. *Reynolds*. This is his language : " It is evident that the defendant, under the decree in this case, will have the same title which he expected to obtain when he entered into this contract with the complainant. And as *the evidence of the*

*previous knowledge of the defendant of the state of the title does not contradict anything contained in the agreement itself,* the vice-chancellor was right in decreeing a specific performance." The distinction between an express covenant that the property shall be conveyed free from incumbrances, and the implication on that head which arises from the covenant to give a good title is clearly pointed out by Chancellor RUNYON in *Newark Savings Institution* v. *Jones* (37 N. J. Eq., 451). "The agreement is silent (he observes), as to the character of the title to be given, and while in such case, in the absence of proof to the contrary, the *implication arises* that the title to be conveyed is a good one *and, therefore, free from incumbrance* that implication may be rebutted. *Notice is sufficient to rebut the mere implication and parol proof is on this ground admissible.*" In such a case, that is, where there is no express covenant and what was intended is left to implication, the vendee "must," to quote the language used in *James* v. *Lichfield* (L. R., 9 Eq., 51), "be taken to have had present in his mind all those things of which he had notice." Where, however, nothing has been left to implication or to doubtful phraseology, there is no reason why an express covenant in such a contract should be affected by notice of easements, restrictions or other incumbrances any more than if the covenant were contained in an ordinary deed of conveyance. That knowledge or notice of the existence of an easement on the part of a grantee would be no defense to an action against the grantor for the breach of a covenant against incumbrances was expressly held in *Huyck* v. *Andrews* (113 N. Y., 81), where the language of BRONSON, J., in *Mott* v. *Palmer* (1 N. Y., 564), was quoted with approval. Judge BRONSON there said, it was a proposition too plain to be disputed, that parol evidence was inadmissible to control the legal effect and operation of a deed, and that if the plaintiff had been told at the time that Brown owned the rails, and more, "if the rails had *been expressly excepted by parol* from the operation of the grant and covenant, it would have been no answer to the action."

There are exceptional cases where the covenant may be reformed or rectified upon the ground of mistake, clearly and conclusively established. In such a case, as is said in Dart on Vendors and Purchasers (6th ed., 886), the fact of notice "may be used as the basis

of an inference that it could not have been the intention of the parties that the covenant should include a defect of which both were equally aware." It was undoubtedly with reference to such a case that Mr. Justice PARKER, in *Wetmore* v. *Bruce* (*supra*), observed that "it might have available the plaintiff, could he have shown that the defendant had notice of the restriction and purchased with full knowledge of its existence and effect." The defendants here made no claim to reform or rectify the covenant. They asked no affirmative relief, nor did they state any facts which could serve as a basis for such relief. They did not pretend that the restriction was omitted by mutual mistake or mutual oversight. On the contrary, they said that the contract was drawn as it is, advisedly and deliberately, after the parol agreement was made. They insisted, and still insist, that there was no mistake even of law, for the reason that, in their judgment, then and now, the plaintiffs, by the contract as drawn, agreed to take subject to the restriction. They also claimed, and they still claim, that the property was described by its ward number as well as by its street number, and that the words "more or less" were added to the specified dimensions with reference to the restriction in question. It is needless to say that neither of these formalities can have any bearing upon the real question, namely, the effect of the express covenant. Indeed, these suggestions merely evoke the natural and pertinent inquiry why, if it had been intended to convey subject to the restriction, such pointless methods were resorted to rather than the few plain words which would have been conclusive.

Upon the pleadings and proofs, as they stood upon the trial, we think the plaintiffs were entitled to the relief prayed for, and the judgment appealed from should, therefore, be reversed and a new trial ordered, with costs to the appellants to abide the event.

VAN BRUNT, P. J., and ANDREWS, J., concurred.

Judgment reversed and new trial ordered, with costs to the appellants to abide event.